UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

CLEO M. CABAN,

*Plaintiff,*

v.

VERIZON COMMUNICATIONS, INC., and

VERIZON SERVICES CORP.,

*Defendants.*

Case No. __1:25cv 1361 - RDA-LRV__

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

### I. JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 as Plaintiff brings claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, and the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6.

2. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred within the Eastern District of Virginia and Plaintiff resides in Prince William County, Virginia (Alexandria Division).

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Plaintiff timely filed a Charge of Discrimination with the EEOC on February 28, 2025, within 180 days of his constructive discharge.

5. On May 23, 2025, the EEOC issued Plaintiff a Notice of Right to Sue. This action is timely filed within 90 days.

6. Plaintiff has filed a whistleblower complaint with the Occupational Safety and Health Administration (OSHA) pursuant to Section 806 of the Sarbanes-Oxley Act and is proceeding with this action under 18 U.S.C. § 1514A(b)(1)(B).

## III. PARTIES

7. . Plaintiff Cleo M. Caban is a resident of Woodbridge, Virginia, and an honorably discharged U.S. Army veteran with a 90% service-connected disability rating for PTSD and related mental health conditions. At the time of his employment with Verizon, Plaintiff held an active TS/SCI with Counter-Intelligence Polygraph—the highest possible security clearance—issued by the Department of Defense, essential for his specialized cybersecurity work. Plaintiff's verified annual wage was $189,188.37 as documented by the Virginia Employment Commission."

8. Defendant Verizon Communications, Inc. is a Delaware corporation headquartered in New York, a publicly traded company (NYSE: VZ) subject to SEC regulations, and employs over 117,000 employees nationwide. It operates throughout Virginia and engaged Plaintiff in employment as a Senior Dark Web Threat Analyst.

9. Defendant Verizon Services Corp. is a wholly-owned subsidiary of Verizon Communications, Inc., and was Plaintiff's direct employer, sharing integrated operations, management, and human resources functions with its parent company.

## IV. STATEMENT OF FACTS

### A. Employment Background and Performance

10. Plaintiff joined Verizon in June 2019 as a Senior Dark Web Threat Analyst, a position where Verizon maintained and held his TS/SCI with Counter-Intelligence Polygraph security clearance to accommodate potential client requirements for this credential and to prevent clearance lapse through non-utilization. His annual compensation was $189,188.37 plus benefits and equity compensation, with this maintained clearance providing access to positions commanding a 15-25% pay premium ($28,000-$47,000 annually) in the cybersecurity market.

11. Plaintiff consistently met or exceeded expectations, earning praise for high-quality cyber threat intelligence reporting and serving as the team's principal trainer for new analysts. His performance reviews documented exceptional technical skills and dedication to cybersecurity best practices.

12. Plaintiff's specialized role included responsibility for identifying and reporting cybersecurity vulnerabilities, data exposure risks, and regulatory compliance violations affecting critical infrastructure, government contractors, and publicly traded companies—duties that implicated federal regulatory compliance requirements and data protection statutes.

### B. Protected Whistleblowing Activity and Initial Retaliation

13. **February 6, 2024 - Protected Whistleblowing Activity**: Plaintiff identified and reported serious regulatory compliance violations involving exposure of personally identifiable information (PII) affecting a substantial number of individuals, constituting protected activity under federal whistleblower protection statutes.
    - Exposure of personally identifiable information (PII) of over 10,000 individuals, including Social Security numbers and financial account data

- Violations of federal data protection requirements and material cybersecurity incidents requiring regulatory disclosure
- Non-compliance with FISMA security standards for government contractor data

14. Exposure of personally identifiable information (PII) of a substantial number of individuals, violations of federal data protection requirements, and material cybersecurity incidents requiring regulatory disclosure.:

    - Understated the number of affected individuals by 90%
    - Misattributed the breach to external actors rather than internal control failures
    - Failed to disclose material weaknesses in Verizon's cybersecurity controls as required under Federal regulatory requirements.

15. Plaintiff refused to endorse a false narrative that would have concealed regulatory violations from affected parties and appropriate authorities, including misattributing breaches and failing to disclose material control weaknesses as required under federal compliance standards.

16. **February 8, 2024 - Retaliatory Reprimand**: In direct and immediate retaliation for Plaintiff's protected whistleblowing activity, Supervisor Tony St. Clair issued a pretextual formal reprimand citing "unprofessional misconduct," despite Plaintiff's entirely professional conduct in reporting the security vulnerabilities. This reprimand—issued just 48 hours after Plaintiff's protected disclosure—marked the beginning of a systematic campaign of retaliation that would escalate over the subsequent seven months.

## C. Escalating Pattern of Retaliation and Hostile Work Environment

17. **March 9, 2024 - First Law Enforcement Interaction**: Just 29 days after the retaliatory reprimand, Plaintiff experienced his first interaction with Arlington County law enforcement—a direct consequence of the severe psychological distress caused by the hostile work environment and retaliation. This temporal proximity, as established in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), demonstrates the immediate and severe impact of Defendant's unlawful conduct on Plaintiff's mental health stability.

18. The retaliatory campaign systematically destroyed Plaintiff's mental health equilibrium, triggering severe PTSD episodes that had been previously well-managed through consistent medical treatment and workplace stability, consistent with the standard established in *Passantino v. Johnson & Johnson Consumer Products*, 212 F.3d 493 (9th Cir. 2000), recognizing PTSD exacerbation from workplace discrimination.

19. **July 12, 2024**: The retaliation escalated when, following Plaintiff's notification to his team via group text that he was delayed due to a dental appointment, Supervisor Tony St. Clair imposed an unprecedented and punitive directive requiring Plaintiff to notify him every time he left his desk, including for restroom use—a demeaning requirement not imposed on similarly situated employees without disabilities, violating the ADA's prohibition on unnecessary medical inquiries and surveillance.

20. **July 29, 2024**: During Plaintiff's mid-year performance review, St. Clair improperly focused on Plaintiff's intended HR complaint, his veteran status, and disability-related absences, stating that Plaintiff's rating and continued employment would depend on whether he dropped his complaint—constituting unlawful retaliation under the ADA,

Title VII, and USERRA, and violating the standard in *Crawford v. Metropolitan Government of Nashville*, 555 U.S. 271 (2009).

21. **August 5, 2024**: Plaintiff formally submitted a complaint to HR Business Partner Nika Seelan regarding discriminatory and retaliatory behavior, constituting protected activity under federal anti-discrimination statutes.

22. **August 8, 2024**: The HR investigation was delayed due to Ms. Seelan's administrative oversight, demonstrating Verizon's deliberate indifference to discrimination complaints as defined in *Vance v. Ball State University*, 570 U.S. 421 (2013).

23. **August 22, 2024**: St. Clair escalated his retaliatory conduct by nitpicking the formatting of Plaintiff's Weekly Threat Actor Bulletins (WTAB)—work that had previously received commendation and praise from management.

24. **September 13, 2024**: In a conference call with HR Business Partner Nika Seelan present, Director Jim Meehan explicitly stated to Plaintiff: 'I'm happy you apologized because I hold grudges'— when Plaintiff voiced concerns about St. Clair's inability to cease retaliatory behavior— constituting a direct admission of retaliatory animus by a decision-making supervisor that constitutes direct evidence of discrimination under *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

### D. Constructive Discharge Events

25. **September 19, 2024**: The constructive discharge, meeting the standard established in *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004), culminated in: .

    - **11:01 AM**: St. Clair issued further unwarranted reprimands over formatting issues
    - **11:59 AM**: Plaintiff warned leadership that he would escalate the matter to senior Verizon executives and the SEC if the mistreatment persisted
    - **2:33 PM**: Under extreme duress and perceiving no alternative, Plaintiff wrote to HR stating "I'd like to offer my resignation"—language that was equivocal and intended to open discussion

- **4:53 PM**: Director Meehan immediately responded "We accept your resignation immediately" without engaging HR in consultation or discussion

26. **September 20, 2024**: Before Plaintiff could clarify his intentions or engage in any discussion with HR, Verizon unilaterally revoked his corporate email access, credentials, and network access, effectively terminating his employment without due process.

### E. Verizon's Concealment of Evidence

27. Following Plaintiff's constructive discharge, Verizon submitted evidence to the Virginia Employment Commission in opposition to Plaintiff's unemployment benefits claim. In a deliberate act of concealment that would warrant adverse inference under *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), Verizon employee Susan Penick Graham redacted and omitted Director Meehan's September 19, 2024, 4:53 PM email response while providing Plaintiff's equivocal resignation statement.

### F. Immediate Family and Financial Impact

28. At the time of his constructive discharge, Plaintiff was the sole income provider for his family, with his spouse in her second trimester pregnancy with their daughter Sofia (born March 24, 2025, during Plaintiff's unemployment period). VA medical records document that Plaintiff's 'wife kicked him out' during her pregnancy due to job loss, creating complete family destruction."

29. The immediate loss of healthcare coverage during a high-risk pregnancy and the resulting financial hardship constituted significant damages directly flowing from Defendant's discriminatory and retaliatory conduct.

### G. Severe Mental Health Crisis and Medical Access Disruption

30. **November 15, 2024**: As documented in Exhibit K (VA Mental Health Transcript), Plaintiff's forced resignation resulted in a catastrophic interruption of his ongoing PTSD treatment and access to Class II controlled medications (Concerta) that he had been taking for three years to manage his service-connected mental health conditions.

31. During his VA mental health appointment on November 15, 2024, Plaintiff expressed desperate frustration about his inability to access essential medications, stating his urgent need for treatment continuity. The VA mental health provider's response was to propose instituting a "legal hold" for involuntary commitment—demonstrating the severity of Plaintiff's mental health crisis directly caused by Verizon's discriminatory conduct.

31.5 **Devastating Medical Evidence**: VA mental health records document Plaintiff's desperate plea: 'What do I have to do? Threaten to kill myself?' and reveal he had 'no other means of income' following termination, demonstrating the complete financial and psychological

### H. Criminal Justice System Involvement and Security Clearance Revocation

32. The criminal charges filed between March 2024 and April 2025 represent documented evidence of severe psychological deterioration directly caused by Defendant's retaliatory conduct, establishing proximate causation under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011).

33. **December 23, 2024 - April 17, 2025**: Plaintiff was incarcerated for 109 days, including 37 days of court-ordered incompetency treatment at Western State Mental Hospital in Staunton, Virginia, providing legal determination of mental incapacity directly caused by workplace trauma."

34. **April-May 2025**: As a direct result of Plaintiff's criminal conviction and incarceration, the Department of Defense revoked his Top Secret/SCI security clearance, which had been continuously maintained since his military service.

35. The security clearance revocation creates substantial career impact. While reapplication may be possible after 12-24 months per agency policy, reinstatement with criminal history requires extensive mitigation under SEAD-4 guidelines. Industry data shows TS/SCI with CI Polygraph positions command a 10-22% salary premium, with clearance loss representing approximately $350,000 in realistic career damages over 20 years.

**I. Causal Link: Employment Discrimination to Career Destruction**

36. The evidence establishes an unbroken causal chain consistent with tort causation principles established in *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339 (1928), and *Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998):

   - **February 6-8, 2024**: Protected whistleblowing → immediate retaliation
   - **February-March 2024**: Hostile work environment → PTSD exacerbation (29-day proximity)
   - **March 2024**: First mental health crisis events
   - **July-September 2024**: Escalating retaliation → constructive discharge
   - **September 2024**: Loss of healthcare → medication disruption
   - **November 2024**: Documented mental health crisis
   - **December 2024-April 2025**: Criminal charges and incarceration
   - **April-May 2025**: Security clearance revocation
   - **Present**: Complete career destruction in specialized field

**V. LEGAL CLAIMS**

**COUNT I - SARBANES-OXLEY ACT WHISTLEBLOWER RETALIATION (18 U.S.C. § 1514A)**

37. Plaintiff realleges and incorporates by reference all preceding paragraphs.

38. Verizon is a publicly traded company subject to the Securities Exchange Act of 1934 and SOX requirements.

39. Plaintiff engaged in protected activity under 18 U.S.C. § 1514A by reporting conduct he reasonably believed constituted violations of federal securities laws and regulations. [Specific regulatory details withheld to protect ongoing proceedings]

40. Defendants retaliated against Plaintiff for this protected activity through adverse employment actions including reprimands, hostile work environment, and constructive discharge.

41. Plaintiff suffered damages including lost wages, benefits, emotional distress, and career destruction as a direct result of Defendants' unlawful retaliation.

## COUNT II - DODD-FRANK ACT WHISTLEBLOWER RETALIATION (15 U.S.C. § 78u-6)

42. Plaintiff realleges and incorporates by reference all preceding paragraphs.

43. Plaintiff provided information to Verizon's management regarding conduct he reasonably believed violated federal securities laws and regulations that could result in regulatory action. [Specific details withheld to protect ongoing proceedings]

44. Under Digital Realty Trust, Inc. v. Somers, 138 S. Ct. 767 (2018), Plaintiff's internal reporting to management regarding reasonably believed securities law violations constitutes protected activity.

45. Defendants retaliated against Plaintiff for this protected activity, causing significant monetary damages and entitling Plaintiff to double back pay and reinstatement under 15 U.S.C. § 78u-6(h).

## COUNT III - ADA: DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION (42 U.S.C. §§ 12112, 12203)

46. Plaintiff realleges and incorporates by reference all preceding paragraphs.

47. Plaintiff is a qualified individual with multiple disabilities under 42 U.S.C. § 12102, including PTSD with a 90% VA disability rating.

48. Verizon failed to engage in any interactive accommodation process under 42 U.S.C. § 12112(b)(5), instead imposing humiliating bathroom monitoring requirements.

49. Verizon retaliated against Plaintiff for requesting accommodations and filing internal complaints, violating 42 U.S.C. § 12203(a).

50. Verizon's conduct caused Plaintiff's loss of access to essential PTSD medications and subsequent mental health crisis, establishing causation under *Passantino v. Johnson & Johnson*, 212 F.3d 493 (9th Cir. 2000).

## COUNT IV - TITLE VII: RETALIATION AND CONSTRUCTIVE DISCHARGE (42 U.S.C. § 2000e-3)

51. Plaintiff realleges and incorporates by reference all preceding paragraphs.

52. Plaintiff engaged in protected activity by opposing unlawful employment practices and filing internal discrimination complaints.

53. Director Meehan's statement **'I'm happy you apologized because I hold grudges'** constitutes direct evidence of retaliatory animus under *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

54. The escalating harassment following each instance of protected activity, culminating in immediate acceptance of an equivocal resignation, establishes constructive discharge under *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004).

## COUNT V - USERRA: MILITARY SERVICE DISCRIMINATION AND RETALIATION (38 U.S.C. §§ 4311, 4323)

55. Plaintiff realleges and incorporates by reference all preceding paragraphs.

56. Plaintiff's honorably discharged veteran status and 90% service-connected disability rating establish protected status under 38 U.S.C. § 4311.

57. Verizon discriminated against Plaintiff based on his military service and service-connected disabilities, including targeting his need for PTSD treatment.

58. The constructive discharge constituted unlawful adverse action violating 38 U.S.C. §§ 4311(a) and (b).

59. Defendants' violation was willful, entitling Plaintiff to liquidated damages under 38 U.S.C. § 4323(d)(1)(C).

## COUNT VI - VIRGINIA HUMAN RIGHTS ACT: DISABILITY & VETERAN DISCRIMINATION (Va. Code §§ 2.2-3905, 2.2-3905.1)

60. Plaintiff realleges and incorporates by reference all preceding paragraphs.

61. As an employer with more than five employees, Verizon was required to provide reasonable accommodations for Plaintiff's disabilities under Va. Code § 2.2-3905.1.

62. Verizon failed to engage in any interactive accommodation process and subjected Plaintiff to discriminatory supervision and retaliation.

## COUNT VII - VIRGINIA STATUTORY RETALIATION (Va. Code § 40.1-27.3)

63. Plaintiff realleges and incorporates by reference all preceding paragraphs.

64. Plaintiff was subjected to unlawful retaliation for asserting rights under federal anti-discrimination statutes.

65. This violation of Virginia's statutory retaliation protections entitles Plaintiff to uncapped damages under state law.

## COUNT VIII - WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

66. Plaintiff realleges and incorporates by reference all preceding paragraphs.

67. Plaintiff was constructively discharged for refusing to participate in concealment of regulatory violations and for asserting statutory rights.

68. This violates Virginia's public policy as established in *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214 (4th Cir. 2015), and *VanBuren v. Grubb*, 733 S.E.2d 919 (Va. 2012).

## COUNT IX - FAMILY DESTRUCTION DAMAGES

69. At the time of constructive discharge, Plaintiff was sole provider for his pregnant spouse and three children. VA medical records explicitly document that his 'wife kicked him out' during her second trimester pregnancy due to 'no other means of income' after job loss.

70. Marital Crisis: Wife's separation during pregnancy created $150,000 in counseling, housing, and emotional trauma damages.

71. Pregnancy Impact: Fourth child born during incarceration with family separated, creating $200,000 in medical complications and childcare crisis.

72. Housing Instability: Mortgage forbearance and potential foreclosure created $75,000 in housing-related damages.

73. Total Family Destruction: $425,000 representing direct consequences of Defendants' retaliatory conduct.

## COUNT X - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiff realleges and incorporates by reference all preceding paragraphs.

75. Defendants owed Plaintiff a duty of care to maintain a non-discriminatory workplace and to avoid conduct that would foreseeably cause severe emotional distress to a disabled veteran with known PTSD.

76. Defendants breached this duty through their systematic campaign of retaliation and discrimination.

77. As a direct and proximate result, Plaintiff suffered severe emotional distress requiring involuntary psychiatric hospitalization, meeting the physical manifestation requirement under Virginia law.

## VI. DAMAGES

Plaintiff seeks the following damages, strategically allocated by statute to maximize recovery:

### A. UNCAPPED FEDERAL WHISTLEBLOWER DAMAGES (SOX/Dodd-Frank)

78. **Back Pay with Doubling**: $250,111

79. **Front Pay (4 years)**: $756,754

80. **Special Damages (emotional distress)**: $1,000,000

81. **Litigation costs/expert fees**: $200,000

**Subtotal**: $2,206,865

### B. DODD-FRANK

82. **Double Back Pay:** $500,222

83. **Additional remedies:** $300,000

**Subtotal:** $800,222

### C. USERRA (Willful Violation)

84. **Lost wages/benefits:** $101,460

85. **Liquidated damages:** $101,460

**Subtotal:** $202,920

### D. TITLE VII/ADA (CAPPED)

86. **Compensatory:** $150,000

87. **Punitive:** $150,000

**Subtotal:** $300,000

### E. VIRGINIA STATE LAW (UNCAPPED)

88. **Negligent Infliction (with family impact):** $925,000

89. **Lost clearance premium (20 years × $17,500):** $350,000

90. **Professional reputation:** $450,000

91. **Medical/psychiatric:** $302,000

92. **Lost retirement/benefits:** $400,000

**Subtotal:** $2,427,000

### F. FAMILY DESTRUCTION DAMAGES

93. **Documented family crisis:** $425,000

**Subtotal:** $450,000

### G. ECONOMIC LOSSES

94. **Healthcare continuation:** $75,000

95. **Retraining/transition:** $200,000

96. **Housing damages:** $100,000

97. **VEC documented wage loss:** $116,050

**Subtotal:** $491,050

**TOTAL DAMAGES: $7,253,057**

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against Defendants and grant:

### A. Monetary Relief

98. **Compensatory Damages** of $6,953,057 as itemized above.

99. **Punitive Damages** of $300,000 allocated across federal and state claims.

100. **Attorneys' Fees** under:

- 42 U.S.C. § 12205 (ADA)
- 42 U.S.C. § 2000e-5(k) (Title VII)
- 38 U.S.C. § 4323(h) (USERRA)
- 18 U.S.C. § 1514A(e) (SOX)

101. **Pre- and Post-Judgment Interest** at the maximum rate permitted by law.

### B. Equitable Relief

102. **Reinstatement** to Plaintiff's former position with full seniority and benefits, OR front pay in lieu of reinstatement if reinstatement is not feasible.

103. **Injunctive Relief** requiring Defendants to:

- Implement comprehensive anti-discrimination and anti-retaliation policies
- Provide mandatory whistleblower protection training for all supervisory personnel
- Establish independent oversight for accommodation requests and whistleblower complaints
- Create anonymous reporting mechanisms for regulatory violations
- Submit to quarterly compliance audits for three years
- Report all material cybersecurity incidents to appropriate regulatory authorities

104. **Preliminary Injunction** for immediate restoration of healthcare benefits pending resolution of this matter.

105. **Employer-directed** letters of correction acknowledging separation was not for misconduct, suitable for submission in security clearance mitigation proceedings under SEAD-4 guidelines.

106. **Tax gross-up** provision for any lump-sum settlement payment

107. **Prejudgment interest** on all back pay awards at applicable federal rates

### C. Evidentiary and Discovery Relief

108. **Adverse Inference Instructions** regarding Defendants' deliberate concealment of Director Meehan's resignation acceptance email.

109. **Discovery Sanctions** including cost-shifting for bad faith conduct.

### D. Additional Relief

110. **Declaratory Relief** that Defendants violated federal and state anti-discrimination and whistleblower protection laws.

111. **Expungement** of all negative employment records and communications to prospective employers.

112. **Letter of Exoneration** to the Department of Defense supporting security clearance reinstatement.

113. Such other relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

114. Plaintiff demands a jury trial on all triable issues pursuant to the Seventh Amendment and Fed. R. Civ. P. 38.

**Dated**: August __15__, 2025

**Respectfully submitted,**

/s/ Cleo M. Caban

Cleo M. Caban

Pro Se Plaintiff

1770 Rockledge Terrace

Woodbridge, VA 22192

Email: cleocaban@gmail.com

Phone: (202) 330-2466

**CERTIFICATE OF SERVICE**

I hereby certify that on August __15__, 2025, I will cause the foregoing Complaint to be served upon Defendants through their registered agents:

**Verizon Communications, Inc.**

c/o Corporation Service Company

1775 Duke Street, Suite 110

Alexandria, VA 22314

**Verizon Services Corp.**

c/o The Corporation Trust Company

1209 Orange Street

Wilmington, DE 19801

/s/ Cleo M. Caban

Cleo M. Caban

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
__Alexandria__ DIVISION

__Caban__
Plaintiff(s),

v.                                          Civil Action Number: __1:25cv1361-RDA-LRV__

__Verizon Comm. Inc., et al.__
Defendant(s),

## LOCAL RULE 83.1 (N) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of __Caban v. Verizon Complaint__
(Title of Document)

__Cleo M. Caban__
Name of *Pro Se* Party (Print or Type)

__/s/ Cleo C.__
Signature of *Pro Se* Party

Executed on: __15 Aug 25__ (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)