**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| CLEO M. CABAN,<br>Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS, INC., *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:25-cv-1361 (RDA/LRV) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on *pro se* Plaintiff Cleo M. Caban's Motion to Alter or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e) and for Leave to File a Third Amended Complaint Pursuant to Fed. R. Civ. P. 15(a)(2). Dkt. 24. Plaintiff requests that the Court: (1) alter or amend the judgment to reinstate the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the Americans with Disabilities Act ("ADA"), the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), the Victim and Witness Protection Act ("VWPA"), and the tortious-interference counts; (2) reconsider the denial of appointing counsel in light of *Jenkins v. Woodard*, 109 F.4th 242 (4th Cir. 2024); or, in the alternative, (3) grant Plaintiff leave under Fed. R. Civ. P. 15(a)(2) to file the proposed Third Amended Complaint. *Id.* at 9. For the reasons set forth below, the Court DENIES the Motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a Black and Hispanic U.S. army veteran who worked for Verizon Communications as a Senior Dark Web Threat Analyst. Dkt. 16 at 23. According to Plaintiff, Defendants Rodney Caudle; Susan Penick Graham; David Jackson; John/Jane Doe; James Meehan; Brian K. Miller; Lynn Moore, Jr.; William Perrine; Tamara Roberts; Carrie Roth;

Gajanika Sathiyaseelan; Anthony St. Clair; Tyler Technologies, Inc.; Verizon Business Network Services; Verizon Communications, Inc.; and the Virginia Employment Commission (collectively, the "Defendants") "coordinated a multi-jurisdictional campaign of retaliation, discrimination, and conspiracy against Plaintiff" for disclosing "material cybersecurity violations by Tyler Technologies." *Id.* at 2. Plaintiff alleges that his supervisor, Defendant Anthony St. Clair, issued a written reprimand and fired him in response to his disclosures. *Id.*

Plaintiff asserts multiple counts against Defendants under Title VII, VCCA, and the Racketeer Influenced and the Corrupt Organizations Act ("RICO") broadly for: (1) race-based and national origin based disparate treatment; (2) tortious interference with contractual relations; (3) tortious interference with business expectancy; (4) unjust enrichment; (5) breach of implied covenant of good faith and fair dealing; (6) deliberate indifference; and (7) negligent representation. *Id.* at 2-6.

B. Procedural History

On August 15, 2025, Plaintiff filed the present civil rights action against Verizon Communications, Inc. and Verizon Services Corp. Dkt. 1 at 1. The same day, Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* (Dkt. 2) and a Motion for *Pro Se* E-Noticing (Dkt. 3). On December 19, 2025, Plaintiff filed his First Amended Complaint adding Rodney Caudle, Susan Penick Graham, David Jackson, John/Jane Doe, James Meehan, Brian K. Miller, Lynn Moore, Jr, William Perrine, Tamara Roberts, Carrie Roth, Gajanika Sathiyaseelan, Anthony St. Clair, Tyler Technologies, Inc., Verizon Business Network Services, Verizon Communications, Inc., and the Virginia Employment Commission as Defendants. Dkt. 8. That same day, Plaintiff filed his Second Motion for Leave to Proceed *in forma pauperis*. Dkt. 9.

On April 22, 2026, this Court granted Plaintiff's *in forma pauperis* Motions (Dkts. 2, 9), and dismissed Counts 1-12, 14-15, 18-21, 23, 27, and 29-34 of the Amended Complaint without prejudice. Dkt. 12.

On May 22, 2026, Plaintiff timely filed his Second Amended Complaint (the "SAC"). Dkt. 16. On July 8, 2026, this Court dismissed the SAC with prejudice for failure to state a claim upon which relief could be granted. Dkt. 23 (the "Order"). The Court held that Plaintiff would not be permitted further leave to amend because doing so appeared futile. *Id.* Despite this, on July 16, 2026, Plaintiff filed the present Motion. Dkt. 24.

In addition to the pending Motion, Plaintiff filed an appeal and the Fourth Circuit has delayed resolution of the appeal pending the Court's disposition of the Motion.[1] Dkts. 25-29.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 59(e), a court may "alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407 (4th Cir. 2010). Here, Plaintiff does not identify substantially different evidence or an intervening change in controlling law. Plaintiff states that he "invokes the third ground only, and confines this motion to three discrete legal errors and one request in the alternative." Dkt. 24 at 2. "A prior decision does not qualify for this third exception by being 'just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 193

---

[1] Although the Court understands that the Fourth Circuit is awaiting disposition of this matter, the Court has presided over three trials since the Motion was filed in addition to addressing the influx of habeas petitions filed in this District and addressing numerous civil and criminal matters that had been filed and required this District Judge's attention. Thus, the Court has addressed the pending motion as promptly as possible.

(4th Cir. 2009) (citation omitted). Accordingly, the decision to reconsider an order pursuant to Rule 59(e) is within the sound discretion of the district court. *Id.* "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks omitted).

A Rule 59(e) motion "may not be used . . . to raise arguments or present evidence that could have been raised prior to entry of judgment." *Id.* (citation omitted). A motion for reconsideration that only "attempt[s] to reargue the merits" of a case, *French v. King*, 14 F.3d 594, 594 (4th Cir. 1993), or "relitigate[s] old matters" already rejected, *Pac. Ins. Co.*, 148 F.3d at 403 (citation omitted), is not proper and will be denied. A motion for reconsideration should address "only factual and legal matters that the Court might have overlooked." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citation omitted). "It is improper on a motion for reconsideration to ask the Court to rethink what it already thought through—rightly or wrongly." *Id.* (citation omitted). "Though [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

## III. ANALYSIS

In his Motion, Plaintiff alleges the following three errors in the Court's Order: (1) that the Order applied a *prima facie* pleading requirement that *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) forbids, and overlooked specific, non-conclusory comparator allegations; (2) that the Court's analysis of his alleged constructive discharge was error and infected multiple rulings; and (3) that the denial of appointed counsel cannot be reconciled with the Fourth Circuit's *Jenkins* decision. Dkt. 24 at 2, 5-6. Alternatively, Plaintiff asserts that the Court should permit him to

further amend his complaint. For the reasons that follow, the Court finds no basis to reconsider its Order.

A. Title VII Standard

As an initial matter, the Court applied the correct Title VII pleading standard. Under Fourth Circuit precedent, while a Title VII plaintiff need not plead a *prima facie* case to survive a motion to dismiss, the complaint must still allege facts that plausibly satisfy the elements of the statute. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 583-85 (4th Cir. 2015); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Indeed, the Court explicitly recognized that Plaintiff must either allege facts supporting a *prima facie* case ***or***, "[a]lternatively, the Plaintiff must allege facts which are sufficient to support a reasonable inference of discrimination." Dkt. 23 at 14 (citing *Ali v. BC Architects Eng'rs*, PLC, 832 F. App'x 167, 171 (4th Cir. 2020)). And, the *Ali* decision upon which the Court relied itself cited *Swierkiewicz*. *Id.* Even assuming that the Court *did not* reference the appropriate standard (which it did), altering the judgment would not appropriate so long as the complaint fails to state a claim under ordinary pleading rules (which it does). *Holloway v. Md.*, 32 F.4th 293, 298-99 (4th Cir. 2022).

Here, the Court properly evaluated whether Plaintiff alleged sufficient facts to support a reasonable inference of discrimination, ultimately concluding that his allegations relied on mere speculation. Dkt. 23 at 14–15. Furthermore, Plaintiff's factual allegations fail to create a plausible inference of discrimination because his proposed comparator is not similarly situated. To support an inference of discrimination via comparator evidence, a plaintiff must allege that the comparator is similar in all relevant respects. *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 382 (4th Cir. 2022). Bare allegations that a plaintiff was treated differently than an outside comparator are treated as speculative conclusions without specific facts comparing their qualifications,

supervisors, or conduct. *See McCleary-Evans*, 780 F.3d at 585–86. Plaintiff failed to meet this standard. Although Plaintiff points to Steven Atnip, a Caucasian predecessor who allegedly produced the same work product without facing revision demands, the complaint lacks facts plausibly showing they shared a supervisor, identical standards, or a similar performance history. Dkt. 24 at 3. In fact, Plaintiff's own allegations undermine the comparison; he notes that Atnip approved the very products later deemed substandard, which indicates they held entirely different operational roles. *Id.*[2]

Finally, Plaintiff's remaining factual allegations point to personal friction rather than racial or national-origin animus. Facially neutral workplace conflicts or remarks are insufficient to plausibly satisfy the elements of a Title VII claim. *See McCleary-Evans*, 780 F.3d at 585. The supervisor's statement, "I hold grudges," is entirely neutral as to race or national origin. Dkt. 24-1 at 14. Moreover, Plaintiff's complaint explicitly states that the negative performance labels and rigid revision demands only began after February 6, 2024. *Id.* By establishing an explicit timeline tied to an independent workplace event, Plaintiff's own account attributes the supervisor's conduct to a cause other than discriminatory animus. Because the complaint fails to plausibly connect any adverse actions to protected characteristics, Plaintiff cannot demonstrate that the Court erred.

[2] To the extent that Plaintiff asserts that the Court failed to take into account the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), Plaintiff is also incorrect. The Court held that the adverse actions upon which Plaintiff relied did not satisfy Plaintiff's pleading burden because "they are not alleged to have reflected a change in the terms and conditions of his employment." Dkt. 23 at 15. Even in the wake of the *Muldrow* decision, courts have recognized that alleged adverse actions must bear some connection to the terms and conditions of employment. *Credle v. Va. Cmty. Coll. Sys.*, 2025 WL 27827, at *7 (E.D. Va. Jan. 3, 2025) (recognizing that, although *Muldrow* expanded the universe of adverse actions, it did not remove the requirement that such actions be connected to the plaintiff's terms and conditions of employment).

In short, with respect to the Title VII claim, Plaintiff cannot demonstrate that the Court erred in its application of the law. Nor has Plaintiff demonstrated any manifest injustice as a result of the Court's decision.

B. Constructive Discharge

With respect to Plaintiff's argument regarding the Court's analysis of his constructive discharge claim, Plaintiff incorrectly summarizes the Court's decision. The Court did not adopt a categorical rule that resignation defeats causation; rather, it correctly applied the demanding objective standard for constructive discharge and determined that Plaintiff had failed to meet it. *See* Dkt. 23 at 15 ("With respect to the alleged constructive discharge, Plaintiff has alleged no facts demonstrating that his workplace was objectively intolerable.").

Under Title VII and § 1981, a resignation only constitutes an adverse employment action if the employee proves constructive discharge. *Green v. Brennan*, 578 U.S. 547, 555 (2016). To establish a constructive discharge, the plaintiff must demonstrate that working conditions were so intolerable that a reasonable person in the employee's position would have felt compelled to resign. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211–12 (4th Cir. 2019). Dissatisfaction with work assignments, a stressful supervisor, or ordinary workplace friction do not meet this demanding objective standard. *Id.* at 212. Furthermore, procedural concepts like temporal proximity or "cat's paw" liability cannot bypass the threshold requirement of objective intolerability. Although temporal proximity may establish causation in a standard retaliation claim, *see Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015), it is incapable of transforming ordinary friction into an intolerable environment. Similarly, under a "cat's paw" theory, imputing a lower-level supervisor's animus to the ultimate decisionmaker does not inherently alter the physical or

psychological conditions of the workplace to make them intolerable. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011).

Here, the Court committed no clear error because Plaintiff failed to allege an objectively intolerable workplace. Plaintiff points only to standard workplace friction: a written reprimand, repeated critiques of his work, a director's statement that "I hold grudges," and the prompt acceptance of his resignation. Dkt. 24 at 5. These allegations of criticism fall squarely within the category of routine workplace friction that fails the *Perkins* standard. Furthermore, the employer's prompt acceptance of a resignation that Plaintiff himself voluntarily tendered cannot logically be the force that compelled that resignation.

Because the Court correctly applied the correct standard to find Plaintiff's constructive discharge allegations conclusory, its Title VII and § 1981 rulings did not turn on "the resignation rationale alone." Dkt. 24 at 6. The isolated statement that resignation "breaks any causal chain" was confined strictly to the tortious interference analysis, which is wholly distinct from the statutory retaliation claims. Dkt. 23 at 11–12. Accordingly, Plaintiff has again failed to demonstrate any clear error of law or manifest justice and the Motion will again be denied in this regard.

C. Appointment of Counsel

Plaintiff's argument that the Court failed to adequately assess his individual capacity under *Jenkins v. Woodard* lacks merit. 109 F.4th 242, 248 (4th Cir. 2024). Under *Jenkins*, a court evaluating a request for counsel must consider whether the claim is frivolous, the complexity of the case, and the plaintiff's individual capacity to present the claim given their specific circumstances, including mental or physical limitations. *Id.* In applying this standard, the Fourth Circuit focuses on whether a plaintiff's specific conditions severely impair their ability to navigate

the litigation process compared to the average *pro se* litigant. *See id.* Furthermore, a court does not abuse its discretion in denying counsel if the underlying claims ultimately lack a colorable basis in law. *See Simpson v. Youngkin*, No. 24-6338, 2025 WL 3654603, at *2 (4th Cir. Dec. 17, 2025) (unpublished).

Here, the Court has fully considered Plaintiff's disability rating, service-connected conditions, and history of detention and commitment. However, these circumstances do not warrant the appointment of counsel. Unlike the plaintiff in *Jenkins*, Plaintiff is not incarcerated, and nothing in the record suggests his conditions presently prevent him from litigating this matter. On the contrary, Plaintiff's filings demonstrate a high level of literacy and competence. He has submitted detailed pleadings and a motion that explicitly identifies alleged legal errors, cites controlling authority, and proposes a narrower pleading, all while certifying that he did so without attorney assistance. Dkt. 24 at 10. Additionally, the appointment of counsel is unwarranted because the Court has independently determined that Plaintiff has failed to state a viable claim. Because Plaintiff lacks a colorable claim, his individual circumstances cannot overcome the structural deficiencies of his lawsuit. *See Simpson*, No. 24-6338, 2025 WL 3654603, at *2.

Because the record demonstrates that Plaintiff possesses the capacity to present his claims and that those claims lack legal merit, his motion for appointment of counsel must be denied.

### D. Amendment

Because the Proposed Third Amended Complaint does not address the deficiencies noted by the Court in its Order, the Court correctly determined that permitting further amendment was futile. The Court begins with the claims in Counts I, II, and III, which again asserts a Title VII and Section race and national origin discrimination and retaliation claims. Again, the standard is whether Plaintiff has alleged facts that create a plausible inference of discrimination or retaliation.

To the extent that Plaintiff attempts to do so by relying on alleged similarly situated comparators, Plaintiff's allegations fail because Plaintiff concedes that his asserted comparators were not similarly situated. *Contrast* Dkt. 24-2 ¶ 22 (acknowledgment that they "they differed in rank" because "the comparators held more senior titles") *with Tinsley v. City of Charlotte*, 854 F. App'x 495, 500 (4th Cir. 2021) (recognizing that comparators must be "similarly situated in all material respects"). Moreover, Plaintiff does not identify the national origin of either alleged comparator, he describes them only as Caucasian. Indeed, Plaintiff does not identify his own national origin. *See E.E.O.C. v. Phase 2 Invs. Inc.*, 310 F. Supp. 3d 550, 567 (D. Md. 2018) (construing Title VII discrimination allegations for a class described as "Hispanic" as a race discrimination claim instead of a national origin claim, because "[t]he term 'Hispanic' does not describe a nation. It is not even a clear geographical area. . . . 'Hispanics,' in the eyes of the Census Bureau at least . . . can be of any race, any ancestry, any country of origin." (internal brackets and quotation marks omitted)).

More specifically, with respect to Steven Atnip, Plaintiff alleges that Atnip drafted the "Weekly Threat Actor Bulletin ('WTAB') — the same recurring deliverable later assigned to Plaintiff — without a single documented revision." Dkt. 24-2 ¶ 22. That Atnip (who is Caucasian) and Plaintiff both drafted the WTAB and that Atnip is alleged to not have received revisions, while Plaintiff did, is not alone sufficient to create an inference of race or national origin discrimination. This is especially true where evidence submitted by Plaintiff establishes that, when Plaintiff followed his supervisor's guidance, his WTAB was approved and complimented. Dkt. 24-2 ¶ 32 (referencing two occasions where Plaintiff's supervisor stated "looks great" and "Looks much better and more concise"); Dkt. 16-11 (summarizing alleged critique where supervisor refers Plaintiff back to those one of those occasions: "I attached a previous submission of yours that I approved dated 30 Aug 2024. Please reference this for future submissions."). Thus, Atnip is not

an alleged similarly situated comparator whose different treatment creates a plausible inference of discrimination. So too with Sean Dickinson, who created a Python script. Dkt. 24-2 ¶ 22. Plaintiff fails to allege sufficient factual circumstances from which the Court can determine that Dickinson's circumstances were similar to Plaintiff, as Plaintiff acknowledged that he forwent "traditional course of business" with respect to his development. Dkt. 24-3. It is unclear whether this was for the same client, whether Dickinson similarly acted without approval, or any other circumstances other than the creation of a Python script that would render the circumstances similar.

In any event, Plaintiff resigned and Plaintiff's allegations in his Proposed Third Amended Complaint fair no better in attempting to establish a constructive discharge claim. Plaintiff relies on paragraphs 42 and 43 to establish that his workplace was objectively intolerable. But the messages to which he refers and explicitly incorporates into his Proposed Third Amended Complaint do not demonstrate such intolerability. For example, in the September 19, 2024 critique, which came hours before Plaintiff's resignation, Plaintiff's supervisor simply states:

> I previously outlined the format and my expectations of the WTAB. 1 have not revised my guidance to you or Farzad since our discussion concerning the format and length of the WTAB. The WTAB should have short summaries for executive readers and page reference numbers for quick reference followed by the full articles. Please reference email to you and Farzad dated 22 Aug 24 below. I attached a previous submission of yours that I approved dated 30 Aug 2024. Please reference this for future submissions. Thank you.

Dkt. 16-11. Such commentary from a supervisor is neither outrageous nor intolerable. Moreover, the intolerability must be connected to Plaintiff's race or national origin (the protected characteristics on which Plaintiff premises his claim), which he has not done here. *See Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 517 (7th Cir. 1996) ("Once a plaintiff has shown that a constructive discharge occurred, he must prove, as with any other discharge claim under Title VII, that he was constructively discharged because of his membership in a protected class."). Plaintiff

provides no basis for the Court to infer that any of the circumstances he identifies (which do not satisfy the objective intolerability standard in any event) are connected to his race or national origin, for example an unanswered request for a reasonable accommodation. Dkt. 24-2 ¶ 43. Indeed, the only allegation whereby any individual makes an explicit reference to raise, is when Plaintiff alleges that *he* told his colleagues that he had spoken "at a higher volume than most Caucasian males are used to." *Id.* ¶ 27.

With respect to Plaintiff's retaliation claim, Plaintiff has not alleged that he engaged in a protected activity, because the email upon which he relies is nothing more than a generalized complaint about different treatment which could not be reasonably understood to make a complaint about race discrimination. Dkt. 24-2 ¶ 36 (incorporating by reference "Ex. T" which is filed on the docket at Dkt. 24-3 at page 63); Dkt. 24-3 at 63-64 (not referencing race, national origin, or discrimination); *see Bonds v. Leavitt*, 629 F .3d 369, 384 (4th Cir.2011) (emphasizing that Title VII does not "prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII"); *Parker v. Ciena Corp.*, 787 F. App'x 817, 820 (4th Cir. 2019) (holding that complaints "about general workplace grievances," such as a lack of resources and rude treatment in the workplace, did not constitute protected activity); *Monk v. Potter,* 723 F.Supp.2d 860, 880 (E.D.Va.2010), *aff'd, Monk v. Donahoe*, 407 F. App'x. 675 (4th Cir.2011) ("Title VII does not prohibit retaliation against employees who do not allege unlawful discrimination."). Again, Plaintiff has not demonstrated that he suffered an adverse action because he cannot demonstrate a constructive discharge and, even if he could, he alleges that his supervisor was already taking steps to escalate matters before his alleged protected activity. Dkt. 24-2 ¶ 36 (alleging "documentary confirmation that St. Clair had escalated his challenge to Plaintiff's script to Director Meehan on September 13, 2024, ***before***

Plaintiff's 2:56 PM memorandum" (emphasis added)); *see Manguiat v. Bd. of Educ. of Prince George's Cnty.*, 2015 WL 2376008, at *9 (D. Md. May 18, 2015) (stating that "because the alleged retaliation took place before [the plaintiff] engaged in protected activity there can be no causal connection between the two") (citing *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (affirming summary judgment where the "actions that led to [the plaintiff's] probation and termination began before her protected activity, belying the conclusion that a reasonable factfinder might find that [the defendant's] activity was motivated by [her protected activity]")).

With respect to Plaintiff's ADA claim for a reasonable accommodation, Plaintiff asserts that he was denied a reasonable accommodation by the time he resigned (approximately 30 days after he made the request). Dkt. 24-2 ¶ 65 (alleging reasonable accommodation request made in August 2024). But the Fourth Circuit has recognized that such delays do not constitute a denial of reasonable accommodation. *See Smith v. CSRA*, 12 F.4th 396, 415 (4th Cir. 2023) (holding, in a Rehabilitation Act case, that "[a] relatively short delay of a few weeks (or even a few months) in approving a request typically does not support" that there was a denial of the request). And, Plaintiff does not assert that he was involved in any one-on-one meetings with St. Clair in the interim. Indeed, the adverse actions that Plaintiff points to in this regard are all alleged to have occurred *before* Plaintiff made the alleged reasonable accommodation request. *Contrast* Dkt. 23-2 ¶ 65 (alleging August 2024 reasonable accommodation request) *with id.* ¶ 66 (identifying adverse action as occurring in July 2024). Because the alleged adverse actions occurred before his reasonable accommodation requestion and because Plaintiff cannot demonstrate a constructive discharge, permitting Plaintiff to amend his pleadings to assert his ADA reasonable accommodation, discrimination, and retaliation claims would be futile.

Plaintiff's claim under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") continues to be speculative and conclusory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "threadbare recitals of the elements of a cause of action" and "conclusory statements" are insufficient to state a plausible claim). Plaintiff's conclusory allegation that his veteran status was a "motivating factor" in his constructive discharge is unsupported by his factual allegations. Dkt. 24-2 ¶ 74.

As for Plaintiff's Virginia Whistleblower Protection Act claim, Plaintiff fails to allege sufficient factual information to plausibly state a claim. Va. Code § 40.1-27.3. Plaintiff asserts that statements he made during a WebEx cybersecurity assessment call with Tyler Technologies qualify as a protected disclosure. Plaintiff fails to allege a causal connection between the allegedly protected disclosure and any adverse actions, including the termination of Plaintiff's employment, because, despite Plaintiff's conclusory allegations of constructive discharge, Plaintiff resigned and was not terminated. With respect to Plaintiff's alleged reprimand, Plaintiff concedes that the reprimand was for acting "unprofessional" and that he spoke "at a higher volume." Dkt. 23-2 ¶¶ 26-27. Plaintiff does not allege that he faced any adverse consequences for his alleged failure to perform further work for Tyler Technologies and does not tie his "meets some expectations" performance review to this incident. *Id.* ¶ 28. Even if his performance review was tied to this activity, Plaintiff does not allege that any adversity flowed from it or that it differed in any way from his prior reviews. Thus, Plaintiff fails to allege sufficient factual information to plausibly state a claim.

Accordingly, it appears futile to permit Plaintiff to amend and to proceed with the Third Amended Complaint.

## IV. CONCLUSION

In short, Plaintiff has failed to articulate that there has been a clear error of law or a manifest injustice. For the foregoing reasons, it is hereby

ORDERED that Plaintiff's Motion to Alter or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e) and for Leave to File a Third Amended Complaint Pursuant to Fed. R. Civ. P. 15(a)(2) (Dkt. 24) is DENIED; and it is

FURTHER ORDERED that Plaintiff's alternative request for leave to file a Third Amended Complaint is DENIED. The Court's prior Order expressly foreclosed further amendment, concluding that Plaintiff had already been afforded an opportunity to amend and that any additional amendment would be futile. Plaintiff identifies no basis to disturb the Court's prior ruling and instead seeks another opportunity to amend despite the Court's express denial of further leave; and it is

FURTHER ORDERED that the Clerk of Court NOTIFY the U.S. Court of Appeals for the Fourth Circuit of the entry of this Order.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of the Court within thirty (30) days of the date of the entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order that Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure of timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is DIRECTED to forward a copy of this Memorandum Opinion and Order to Plaintiff, who is proceeding *pro se*, at his last address on file.

It is SO ORDERED.

/s/

**Rossie D. Alston, Jr.**
**United States District Judge**

November 17, 2026
Alexandria, Virginia